UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC ENVIRONMENTAL ADVOCATES, LLC,<br>Plaintiff,<br>v.<br>NORTHWEST PALLETS, LLC, et al.,<br>Defendant. | Case No. 2:25-cv-00726-WBS-CSK<br><br>FINDINGS & RECOMMENDATIONS<br><br>(ECF No. 17) |

Pending before the Court is Plaintiff Pacific Environmental Advocates, LLC's motion for default judgment against Defendant Northwest Pallets, LLC.[1] (ECF No. 17.) Pursuant to Local Rule 230(g), the Court submits the motion upon the record and briefs on file and vacated the April 21, 2026 hearing.

For the reasons that follow, the Court recommends Plaintiff's motion for default judgment be GRANTED IN PART, DENIED IN PART, and that judgment be entered in favor of Plaintiff.

/ / /

/ / /

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c).

# I. BACKGROUND

## A. Factual Background

Plaintiff Pacific Environmental Advocates, LLC is an environmental organization which has an organizational purpose and mission to enforce provisions of the Federal Clean Water Act ("CWA") and California Industrial General Permit ("General Permit"). Compl. ¶ 16. Plaintiff has associational members located throughout Northern California. *Id*. ¶ 18.

Defendant Northwest Pallets, LLC "designs, engineers, and manufactures pallets for various industries." *Id*. ¶ 103. Defendant has a facility in Sacramento, California and has failed to submit a Notice of Intent to discharge and apply for California General Permit coverage to discharge stormwater. *Id*. ¶ 7. Defendant stores industrial materials outdoors and uncovered, which can be exposed to stormwater. *Id*. ¶ 104. After a review and observations of the facility, Plaintiff alleges stormwater leaves the boundaries of the facility before reaching the Sacramento River. *Id.* ¶ 108.

Plaintiff has a member who identifies herself by the initials D.B. as someone who had recreated around Steelhead Creek and the Sacramento River. *Id*. ¶¶ 27-28. D.B. had grown up around the area and saw the water quality get progressively worse each year. *Id*. ¶ 31. D.B. has visited Defendant's facility and "observed the alarming lack of housekeeping practices", which included metal and plastic waste around the facility and alleged that she had observed this at a rain event. *Id*. ¶ 33. D.B. also observed industrial materials being stored outdoors without cover. *Id*. ¶ 34. D.B. became hesitant to allow herself or her family to use Steelhead Creek or the Sacramento River or its tributaries for fear of pollution being emanated from the facility. *Id*. ¶ 41. D.B. no longer engages in hiking, water sports, or feels safe consuming fish from the affected waterways. *Id*. ¶¶ 43, 46.

## B. Procedural Posture

On March 3, 2025, Plaintiff filed a Complaint against Defendants Northwest Pallets, LLC and Larry D. Kelley. (ECF No. 1.) On March 18, 2025, summons were

returned executed for both Defendants. (ECF Nos. 4, 5.) On April 11, 2025, Plaintiff requested an entry of default. (ECF No. 6.) On April 16, 2025, the Clerk entered default as to Defendant Northwest Pallets, LLC and declined default as to Defendant Kelley. (ECF Nos. 7, 8.) On April 19, 2026, Plaintiff filed a notice of voluntary dismissal terminating Defendant Kelley from the action and leaving Defendant Northwest Pallets, LLC as the sole defendant. (ECF No. 23.)

On March 17, 2026, Plaintiff filed a motion for default judgment against Defendant Northwest Pallets, LLC with a hearing noticed for April 21, 2026. (ECF No. 17.) Plaintiff accompanied its motion with a request for judicial notice. (ECF No. 18.) On April 8, 2026, the Court vacated the April 21, 2026 hearing due to Defendant Northwest Pallets' failure to file an opposition or statement of non-opposition to the motion for default judgment. (ECF No. 19.) Though provided with another opportunity to respond, Defendant Northwest Pallets failed to file an opposition or statement of non-opposition. *See* Docket. Therefore, the Court submits the motion on the record and briefs pursuant to Local Rule 230(g).

## II. LEGAL STANDARDS

### A. Default Judgment

Under Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, this default does not automatically entitle the plaintiff to a judgment. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citations omitted). The decision to grant or deny the entry of default judgment is within the district court's discretion. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016).

In determining whether to enter default judgment, courts consider the following factors:

1. the possibility of prejudice to the plaintiff;
2. the merits of the substantive claim(s);
3. the sufficiency of the complaint;

4. the amount of money at stake in the lawsuit;
5. whether there are any disputes of material fact;
6. whether the defendant's default was due to excusable neglect; and
7. the strong policy favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The Ninth Circuit has long disfavored default judgments, counseling that cases be decided on the merits "whenever reasonably possible." *Id*. at 1472.

Once a default is entered, all well-pleaded allegations in the complaint regarding liability are deemed true. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *United States v. Cathcart*, 2010 WL 1048829, at *4 (N.D. Cal. Feb. 12, 2010) (citation omitted). "[I]t follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Necessary facts not contained in the pleadings and claims which are legally insufficient are not established by default. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). Further, a plaintiff's allegations regarding damages are not deemed true at default, and the plaintiff bears the burden to prove damages with evidence. See Fed. R. Civ. P. 55(b)(2)(C); *Geddes v. United Fin. Grp*., 559 F.2d 557, 560 (9th Cir. 1977).

**B. Judicial Notice**

Federal Rule of Evidence 201 permits the Court to take judicial notice of facts "not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. This includes undisputed facts from documents attached to the complaint or those on which the complaint "necessarily relies." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (approving judicial notice of documents from judicial proceedings); *King v. California Dep't of Water Res.*, 561 F.

Supp. 3d 906, 910 (E.D. Cal. 2021) (taking judicial notice of administrative agency records, including decisional documents); *Gamboa v. Tr. Corps.*, 2009 WL 656285, at *3 (N.D. Cal. Mar. 12, 2009) (taking judicial notice of recorded documents related to a foreclosure sale, including grant deed and deed of trust, as they were "part of the public record and [] easily verifiable").

**III. DISCUSSION**

The Complaint raises the following claims: (1) Failure to Prepare, Implement, Review, and Update an Adequate Stormwater Pollution Prevention Plan ("SWPPP"); (2) Failure to Implement an Adequate Monitoring and Reporting Plan; (3) Submission of Annual Reports to the Regional Water Board; (4) Failure to Implement the Best Available and Best Conventional Treatment Technologies ("BAT" and "BCT"); (5) Discharges of Contaminated Stormwater in Violation of Permit Conditions and the CWA; (6) Discharge of Contaminated Stormwater without NPDES Authorization in Violation of the CWA; and (7) Failure to Properly Train Facility Employees and Pollution Prevention Team. *See* Compl. Before turning to its default judgment analysis, the Court first addresses Plaintiff's request for judicial notice. The Court next must determine whether it has subject matter jurisdiction and personal jurisdiction over Defendant, and whether Plaintiff has standing. The Court then addresses the *Eitel* factors for default judgment.

**A. Judicial Notice**

Plaintiff requests the Court take judicial notice of records from the National Oceanic Atmospheric Administration ("NOAA") containing precipitation data for the Sacramento 8.0 NE station covering a period between July 1, 2019 and July 31, 2024. Pl. Req. Judicial Notice at 2 (ECF No. 18.) Plaintiff also requests the Court take judicial notice of the State Water Resources Control Board's Industrial General Permit (Water Quality Order 2014-0057-DWQ, as amended by Orders 2015-0122-DWQ and 2018-0028-DWQ).

The Court may take judicial notice of the NOAA records as "a court may take judicial notice of matters of public record." *Lee v. City of Los Angeles*, 250 F. 3d 668, 689

(9th Cir. 2001). The Court may take judicial notice of the State Water Resources Control Board permit because "[a] court may also take judicial notice of 'records and reports of administrative bodies." *California Sportfishing Protection Alliance v. Shiloh Group, LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017). Accordingly, the Court grants Plaintiff's requests for judicial notice.

**B. Jurisdiction and Service**

1. <u>Subject Matter</u>

When default judgment is sought, the "district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted). The Court has federal question jurisdiction over Plaintiff's CWA claims. *See* 28 U.S.C. §§ 1331.

In addition, the Court considers whether Plaintiff has complied with the CWA's notice requirement. "For a federal court to exercise subject matter jurisdiction over a private CWA claim, the individual or entity bringing the claim 'must give a 60-day notice of intent to sue." *Cottonwood Env't L. Ctr. v. Edwards*, 86 F. 4th 1255, 1263 (9th Cir. 2023) (quotation omitted). The notice of intent to sue requires the following:

> sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the persons or persons responsible… location… date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). Plaintiff served its 60-day notice letter on Defendant on July 13, 2024. Pl. Mot. Default J. ¶ 8; Compl. ¶ 2. The 60-day notice letter describes each of Defendant's alleged violations and provides the dates of each violation, where applicable. *See* Compl. Ex. A (ECF No. 1 at 38-47). Therefore, the Court concludes Plaintiff's letter has fulfilled the notice requirement. *See Coastal Environmental Rights Foundation v. Aztec Perlite Company, Inc.*, 2024 WL 4520350, at *4 (S.D. Cal. Oct. 16, 2024) (citing *Baykeeper v. Tosco Corp.*, 309 F. 3d 1153, 1158 (9th Cir. 2002)). Thus, the Court concludes it has subject matter jurisdiction over this action.

The Court also has personal jurisdiction over Defendant, which is a California limited liability company that operates a wood pallet manufacturing company in the Eastern District of California. Compl. ¶¶ 6,7.

In reviewing a motion for default judgment, the Court must determine whether Defendant was properly served with the summons and complaint. Fed. R. Civ. P. 4(c). Here, a third-party process server personally delivered a copy of summons and the Complaint to Lourysela Ochoa, an agent for service of process of Defendant. (ECF No. 4); Compl. ¶ 2. Accordingly, Defendant was properly served. *See* Fed. R. Civ. P. 4(e)(2)(A).

**C. Standing**

The Court must next determine whether Plaintiff has standing to bring suit. An organization has standing to bring suit on behalf of its members when:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires participation of the individual members in the lawsuit.

*Ecological Rights Foundation v. Pacific Lumber Co.*, 230 F. 3d 1141, 1147 (9th Cir. 2000). Individuals have standing to sue in their own right through a showing of an injury in fact that is "(a) concrete and particularized and (actual and imminent, not conjectural and hypothetical,… the injury is fairly traceable to the challenged action of the defendant;… and it is likely… that the injury will be redressed by a favorable decision." *See Friends of the Earth, Inc. v. Laidlaw Environmental Services* (TOC), Inc., 528 U.S. 167, 180-181.

Here, the Court finds that Plaintiff has alleged an injury in fact. The Complaint pleads specific standing allegations from member "D.B." *See* Compl. ¶¶ 26-51. D.B. is both a current member of Plaintiff and has regularly recreated around Steelhead Creek and the Sacramento River near Defendant's facility for at least five years prior to the filing of the lawsuit. Compl. ¶¶ 27-28. D.B. witnessed Defendant's alleged General Permit violations prior to Plaintiff's July 13, 2024 notice letter. Compl. ¶ 45. DB also

observed Defendant's facility's lack of safeguards. Compl. ¶ 33. She also no longer engages in recreational water activities in Steelhead Creek, the Sacramento River, or its tributaries, nor consumes fish from the affected water areas. Compl. ¶¶ 41, 43-46. The Court concludes that these allegations are sufficient to establish injury in fact. *See Ecological Rights Foundation*, 230 F. 3d at 1150 (finding injury in fact where affiants testified they are deterred from enjoying the water body at issue in the case due to concerns of pollutant activity).

The Court also finds that the injury alleged by D.B. is fairly traceable to the actions of Defendant. "An injury is fairly traceable to a challenged action as long as the links in the proffered chain of causation 'are not hypothetical and remain plausib[le].'" *Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *5 (quoting *Ass'n of Irritated Residents v. EPA*, 10 F. 4th 937, 943 (9th Cir. 2021)). Here, the Complaint alleges Defendant violated the CWA and General Permit, which has led to a discharge of pollution into Steelhead Creek, the Sacramento River and its tributaries, which has caused D.B. injury as an individual who recreates there. Compl. ¶¶ 26-51.

Last, the Court finds that Plaintiff has met the redressability requirement of standing. "[A] plaintiff can meet the redressability requirement by showing that 'it is likely, although not certain, that his injury can be redressed by favorable decision.'" *Ass'n of Irritated Residents*, 10 F. 4th at 934 (quoting *National Audubon Soc'y, Inc. v. Davis*, 307 F. 3d 835, 849 (9th Cir. 2002)). A finding that Defendant violated the CWA, leading to an imposition of civil penalties would satisfy the redressability requirement. *See Cal. Coastkeeper All. v. Consumes Corp. 2023 WL 5280260*, at *5 (E.D. Cal. Aug. 16, 2023).

The Court finds that the interests Plaintiff chooses to seek are germane to its purpose. Plaintiff alleges that its organizational purpose is to protect, preserve, and enhance the rivers, creeks, streams, lakes and oceans in California. Compl. ¶ 15. The alleged discharge is located in Steelhead Creek, the Sacramento River, and its tributaries, which are creeks and rivers in California.

Because Plaintiff is seeking equitable and relief and civil penalties, the Court finds

that there is no reason to require the participation of individual members in this suit. *See Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *6 (citing *Associated Gen. Contractors of Am. v. Metro Water Dist*., 159, F. 3d 1178, 1181 (9th Cir. 1998)). Therefore, the Court finds that Plaintiff has established Article III standing.

**D. *Eitel* Factors**

For the following reasons, the Court finds that the *Eitel* factors weigh in favor of granting default judgment against Defendant.

1. Factor One: Possibility of Prejudice to the Plaintiff

The first *Eitel* factor considers whether Plaintiff would suffer prejudice if default judgment were not entered, and such potential prejudice to Plaintiff weighs in favor of granting a default judgment. *See PepsiCo,* 238 F. Supp. 2d at 1177. Here, the Clerk of the Court entered default against Defendant on April 16, 2025 (ECF No. 7), and Defendant has not participated in the litigation despite being served with the Complaint and motion for default judgment. Plaintiff would suffer prejudice if the Court did not grant default judgment because it would be without recourse for recovery. Accordingly, the first *Eitel* factor favors the entry of default judgment.

2. Factors Two and Three: The Merits of the Claims and the Sufficiency of the Complaint

Plaintiff moves for default judgment on its CWA claim and seven of its eight causes of action: (1) Failure to Prepare, Implement, Review, and Update an Adequate Stormwater Pollution Prevention Plan ("SWPPP"); (2) Failure to Implement an Adequate Monitoring and Reporting Plan; (3) Submission of Annual Reports to the Regional Water Board; (4) Failure to Implement the Best Available and Best Conventional Treatment Technologies ("BAT" and "BCT"); (5) Discharges of Contaminated Stormwater in Violation of Permit Conditions and the CWA; (6) Discharge of Contaminated Stormwater without NPDES Authorization in Violation of the CWA; and (7) Failure to Properly Train Facility Employees and Pollution Prevention Team. Pl. Mot. Default J. at 13. The Court begins with determining whether Defendant has incurred CWA liability.

a. *CWA Liability*

"Section 301(a) of the [CWA] prohibits discharges of pollutants into waters of the United States in violation of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to section 402 of the [CWA]." *Los Angeles Waterkeeper v. A and A Metal Recycling, Inc.*, 2015 WL 13917738, at *4 (C.D. Cal. Nov. 18, 2015) (citing 33 U.S.C. §§ 1311(a), 1342(a)). Each state is allowed to administer its own EPA-approved permit program to regulate the discharge of pollutants. *Id*. (citing 33 U.S.C. § 1342(b)).

"NPDES permits come in two varieties: individual and general." *NRDC v. United States EPA*, 279 F. 3d 1180, 1183 (9th Cir. 2002). Individual permits allow for "a specific entity to discharge a pollutant in a specific place and is issued after an informal adjudication process." *Id*. General permits are given to an entire hypothetical class of dischargers pursuant to an administrative rulemaking process. *Id*.

To establish a CWA claim, a plaintiff must prove defendant is "(1) a person [who] (2) discharged (3) a pollutant (4) to navigable waters of the United States (5) from a point source (6) without a permit." *San Francisco Baykeeper v. West Bay Sanitary District*, 791 F. Supp. 2d 719, 754 (N.D. Cal. 2011) (citing *Comm. to Save Mokelumne River v. East Bay Mun. Util. Dist.*, 13 F. 3d 305, 308 (9th Cir. 1993)).

To start, Plaintiff has sufficiently alleged that Defendant is a person within the terms of the CWA. "The term 'person' means an individual, corporation, partnership, association, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 1362(5). The Complaint alleges that Defendant is a California limited liability company, therefore it falls within the meaning of person within 33 U.S.C. § 1362(5). *See United States v. Sweeney*, 483 F. Supp. 3d 871, 909-910 (E.D. Cal. 2020)

The Court then evaluates Plaintiff's allegations of discharge. "A plaintiff can bring a CWA claim based on numerous unpermitted discharges over a large area." *Oregon Natural Desert Ass'n v. Meink*, 797 F. Supp. 3d 1192, 1212 (D. Or. 2025). The Complaint alleges that Defendant discharges storm water during rain events when "storm water

flows onto the surface of the facility where industrial activities occur and areas where airborne materials associated with the industrial processes at the facility may settle onto the ground." Compl. ¶ 105. The Complaint alleges that Defendant stores industrial materials outdoors that may be exposed to storm water and attaches an overhead photo of Defendant's North Sacramento facility in support. *Id*. ¶ 106. Therefore, the Court determines that Plaintiff has established discharge.

Next, the Court finds Plaintiff has established that Defendant has discharged a pollutant. "Storm water represents a unique problem under the CWA because it is a significant source of water pollution but is not inherently a nonpoint or point source." *Ecological Rights Found. v. Pac. Gas & Electric Co*., 713 F. 3d 502, 505 (9th Cir. 2013) (citation and quotation omitted). The CWA regulates storm water discharge if it is associated with industrial activity. *California Sport Fishing Protection Alliance v. Shiloh Group, LLC*, 268 F. Supp. 3d 1029, 1040 (N.D. Cal. 2017) (citing 33 U.S.C. § 1342(p)(2)(B)). 40 C.F.R. § 122.26(b)(14) defines storm water discharge associated with industrial activity as "the discharge from any conveyance that is used for collecting and conveying storm water and that is directly related to manufacturing, processing or raw materials storage areas at an industrial plant." 40 C.F.R. § 122.26(b)(14). "Industries governed by the term 'industrial activity' are defined in accordance with [Standard Industrial Classification ("SIC")] codes, which are used to identify regulated industrial activities." *California Sport Fishing Protection Alliance*, 268 F. Supp. 3d at 1040 (citations omitted). Here, both the Complaint and the 60-day notice of intent allege that Defendant falls under SIC code 2448, which regulates wood pallets.[2] *See* Compl. ¶ 103; Compl. Ex. A at 3. The 60-day notice of intent further alleges that based on the Environmental Protection Agency's industrial fact sheet for industrial businesses under the SIC code 2448, storm water discharges may contain pollutants such as toxic and heavy metals,

---

[2] The Court may consider Plaintiff's July 13, 2024 notice of intent to sue letter when considering the merits of Plaintiff's claims. *See Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *8 n.5 (citing *During v. First Bos. Corp*., 815 F. 2d 1265, 1267 (9th Cir. 1987)).

various types of oil and grease, iron, and zinc. Ex. A at 3. The Complaint also alleges D.B. had observed a rain event observing rusting metal items at Defendant's facility during a rain event. Compl. ¶ 33. The Court finds this sufficient to plausibly state Defendant has discharged a pollutant.

The Court next evaluates whether the pollutants were discharged into navigable waters of the United States. Navigable waters of the United States "include[] only those relatively permanent, standing, or continuously flowing bodies of water forming geographic features that are described in ordinary parlance as streams, oceans, rivers, and lakes." *Blackstone Headwaters Coalition, Inc. v. Gallo Builders, Inc.*, 768 F. Supp. 3d 187, 190 (D. Mass. 2025) (quoting *Rapanos v. United States*, 547 U.S. 715, 739 (2006)). The Sacramento River is a navigable water of the United States. *See Duarte Nursery, Inc. v. United States Army Corps. of Engineers*, 2016 WL 4717986, at *17 (E.D. Cal. 2016). The Complaint alleges pollutants flow from Steelhead Creek to the Sacramento River. Compl. ¶ 162. Therefore, the Court finds Plaintiff has established pollutants were discharged into navigable waters of the United States.

The Court next reviews Plaintiff's allegations regarding a point source. "[W]hen stormwater runoff is collected in a system of ditches, culverts, and channels and is then discharged into a stream or river, there is a discernable (sic), confined and discrete conveyance of pollutants, and there is a discharge from a point source." *Northwest Environmental Defense Center v. Brown*, 640 F. 3d 1063, 1070-1071 (9th Cir. 2011) (quotation modified). The Complaint alleges that the storm water flows through channels at Defendant's facility "untreated via the Sacramento MS4, into Steelhead Creek and the Sacramento River." Compl. ¶¶ 105, 162. Thus, the Court finds that Plaintiff has adequately established a point source.

Last, Plaintiff alleges that Defendant has not prepared a notice of intent and failed to apply for General Permit Coverage. Compl ¶ 7. Thus, Plaintiff has established a violation of the Clean Water Act.

b. *Plaintiff's Remaining Claims*

Because it has been established that Defendant has failed to apply for General Permit coverage, it follows that Plaintiff has established violations of the remaining causes of action, which require compliance with the General Permit. *See* Compl. ¶¶ 136-158, 165-168.

3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of Defendant's conduct. *PepsiCo,* 238 F. Supp. 2d at 1176. Plaintiff seeks civil penalties resulting from Defendant's CWA violations in the amount of $11,430,315, which is significant. *See Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *11 (finding a requested sum of $11,997,000 in civil penalties to be significant under the *Eitel* Factors). Where the Court has discretion to reduce the amount of civil penalties imposed, the Court deems this factor neutral. *See id.* at *11 (citing *National Resources Defense Council v. Sw. Marine, Inc.*, 236 F. 3d 985, 1001 (9th Cir. 2000)).

4. Factor Five: The Possibility of Dispute Concerning Material Facts

Plaintiff has provided the Court with well-pleaded allegations and documentation supporting its claims. *See generally* Compl. Here, the Court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default, and thus, there is no likelihood that any genuine issue of material fact exists. *See, e.g., Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); *accord Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003); *PepsiCo*, 238 F. Supp. 2d at 1177. Accordingly, the fifth *Eitel* factor favors the entry of default judgment.

5. Factor Six: Whether Default was Due to Excusable Neglect

Upon review of the record before the Court, there is no indication that the default was the result of excusable neglect. *See PepsiCo*, 238 F. Supp. 2d at 1177. Plaintiff

served Defendant with the summons and the Complaint in March 2025, and its motion for default judgment in March 2026. (ECF Nos. 4, 17.) Despite ample notice of this lawsuit, Defendant has failed to participate in this action or to defend itself. (*See* Docket.) Accordingly, the sixth *Eitel* factor favors the entry of default judgment.

6. Factor Seven: The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Although the Court is cognizant of the policy favoring decisions on the merits, that policy does not, by itself, preclude the entry of default judgment where a defendant fails to appear or defend itself in an action. *See PepsiCo,* 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc*., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).

7. Conclusion

Upon consideration of the *Eitel* factors, the Court concludes that Plaintiff is entitled to the entry of default judgment against Defendant on the following seven claims: (1) Failure to Prepare, Implement, Review, and Update an Adequate Stormwater Pollution Prevention Plan ("SWPPP"); (2) Failure to Implement an Adequate Monitoring and Reporting Plan; (3) Submission of Annual Reports to the Regional Water Board; (4) Failure to Implement the Best Available and Best Conventional Treatment Technologies ("BAT" and "BCT"); (5) Discharges of Contaminated Stormwater in Violation of Permit Conditions and the CWA; (6) Discharge of Contaminated Stormwater without NPDES Authorization in Violation of the CWA; and (7) Failure to Properly Train Facility Employees and Pollution Prevention Team. The Court next determines the terms of the judgment.

**E. Terms of the Judgment**

Plaintiff seeks declaratory relief, injunctive relief, and $11,430,315 in civil penalties. Pl. Mot. Default J. ¶¶ 51-53. The Court addresses each in turn.

1. Declaratory Relief

Granting declaratory relief is appropriate when "(1) [] the judgment will serve a

useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton*, 783 F. 2d 1371, 1376 (9th Cir. 1986) (quotation omitted). "When claims for declaratory relief are duplicative of other claims, then declaratory relief is therefore unnecessary and redundant." *Minn. Life Ins. Co. v. Philpot*, 2012 WL 4486311, at *11 (S.D. Cal. Sept. 27, 2012). Plaintiff seeks declaratory relief in the form of an order declaring Defendant to have violated the CWA 167 times and that Defendant violates CWA Section 301(a) each time it discharges stormwater from its facility without a permit. Pl. Mot. Default J. at ¶ 51. The Court finds granting Plaintiff's request for declaratory relief would be redundant with an assessment of civil penalties and therefore recommends denying Plaintiff's request for declaratory relief. *See Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *15 (denying declaratory relief on similar grounds).

2. Injunctive Relief

The CWA authorizes injunctive relief to "impel future compliance with the act[.]" *Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *15 (quoting *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 156 (2010)). To obtain injunctive relief under the CWA, a plaintiff must satisfy a four-part test, requiring a demonstration that:

> (1) [a plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) [after consideration of] the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Monsanto,* 561 U.S., at 156-157. Plaintiff requests injunctive relief in the form of ordering Defendant to (1) obtain a proper Industrial General Permit coverage within 30 days; (2) cease all unpermitted discharges until obtaining a proper Industrial General Permit; (3) develop and implement adequate SWPP and BMPs consistent with BAT/BCT standards; (4) establish proper monitoring and reporting standards; (5) submit all required reports; (6) establish and train a Pollution Prevention Team; and (7) take

appropriate action to restore waters impaired by Defendant's violations. Pl. Mot. Default J. ¶ 52. The Court finds that Plaintiff's proposed injunctive relief amounts to an "obey-the-law" injunction. *See SEC v. Goble*, 682 F. 3d 934, 939 (11th Cir. 2012). "Although the Ninth Circuit has not categorically adopted a rule against obey the law injunctions per se, the language of an injunction must still be reasonably be clear so that ordinary persons know precisely what action is proscribed." *Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *16 (internal citations and quotations omitted). The Court finds that Plaintiff's requested injunctive relief does not describe specific acts outside of compliance with the General Permit and therefore recommends denying Plaintiff's request. *See Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *16 (denying request for injunctive relief for similar reasons).

3. <u>Monetary Relief</u>

"If a district court finds a violation [of CWA], then civil penalties under 33 U.S.C. § 1319(d) are mandatory." *National Resources Defense Council v. Sw. Marine, Inc.*, 236 F. 3d 985, 1001 (9th Cir. 2000). Any person who violates the CWA "shall be subject to a civil penalty… per day for each violation" *Californians for Alternatives to Toxics v. Kemen Constr. Co.*, 2021 WL 1734897, at *5 (N.D. Cal. May 2, 2021) (citing 33 U.S.C. § 1319(d)) (emphasis omitted). "The Court 'has discretion to set the amount of a penalty (up to the statutory maximum)." *Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *12 (quoting *Sw. Marine*, 236 F. 3d at 1001). The current statutory maximum is $68,445 per day for each violation. 40 C.F.R. § 19.4. Civil penalties are payable to the U.S. Treasury. *Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *12.

Plaintiff requests civil penalties of $11,430,315, which equals the current statutory daily maximum ($68,445) multiplied by 167 violations from July 1, 2019 to July 31, 2024. *See* Pl. Mot. Default J. ¶ 53; Pl. Req. Judicial Notice at 2. Because Defendant failed to obtain proper permits, Plaintiff contends that every stormwater discharge constitutes a separate violation and that each day of discharge is a separate violation. *See* Pl. Mot.

Default J. ¶ 38. Plaintiff calculated violation days by applying the Industrial General Permit's ("IGP") Qualifying Storm Event ("QSE") criteria, which defines a QSE as a precipitation event that produces a discharge and is "preceded by 48 hours with no discharge." Pl. Mot. Default J. ¶ 39. Plaintiff identified dates of discharge based on the NOAA rainfall data for days with at least 0.1 inches of rainfall and where the previous 48 hours were dry. *Id*. Based on this methodology, Plaintiff identify 167 "violation" days during the time period (July 13, 2019 to July 13, 2024). *Id*. ¶ 41.

Plaintiff requests that the Court assess a civil penalty by applying the daily statutory maximum penalty ($68,445) for 167 "violation" days without any assessment of individual claims. This is improper. *See* 33 U.S.C. § 1319(d); *Kernen Construction Co.,* 2021 WL 1734897, at *5 ("a district court may not combine violations into a single violation for the purpose of reducing the civil penalties"). The Court therefore rejects Plaintiff's approach, and instead will assess penalties per violation in accordance with 33 U.S.C. § 1319(d). *See Borden Ranch Partnership v. U.S. Army Corps of Engineers*, 261 F. 3d 810, 817 (9th Cir. 2001) ("[33 U.S.C. § 1319(d)] imposes a maximum penalty per day for each violation.") (citation omitted).

Two methods for a court to calculate a civil penalty are a top-down approach or a bottom-up approach. *Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *12. The top-down approach "first calculates the maximum penalty possible and then reduces that penalty in consideration of the statutory factors." *Center for Biological Diversity v. Marina Point Development Associates*, 434 F. Supp. 2d 789, 799 (C.D. Cal. 2006). Meanwhile, the bottom-up approach first looks at the economic benefit of the violation. *See id*. Due to Defendant's failure to appear in this action, the Court cannot assess the economic benefit of the violation required for the bottom-up approach. Therefore, the Court will proceed with a top-down analysis.

a. *Statutory Factors*

The court may consider the following statutory factors: (1) "the seriousness of the violation"; (2) the economic benefit resulting from the violation; (3) "any history of such

violations"; (4) "any good-faith efforts to comply with the applicable requirements"; (5) economic impact on the violator; and (6) "such other matters as justice may require." 33 U.S.C. § 1319(d).

Plaintiff's wrongful discharge claims (claims five and six) are serious violations, and the Court follows the $3,000 per violation penalty other courts have imposed for similar discharge violation claims. *See Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *13 (assessing $3,000 per violation for discharge violations); *Kernen Construction Co.,* 2021 WL 1734897, at *5 (assessing $10,000 per violation for undisputed discharge violations for actual discharges of storm water containing pollutants).

The Court addresses Plaintiff's remaining claims together: (claim one) failure to prepare, implement, review, and update an adequate SWPPP; (claim two) Failure to Implement an Adequate Monitoring and Reporting Plan; (claim three) Submission of Annual Reports to the Regional Water Board; (claim four) failure to implement BAT and BCT technologies; and (claim seven) Failure to Properly Train Facility Employees and Pollution Prevention Team. Other district courts have granted motions for default judgment for similar CWA claims, finding these violations to be less serious and awarding between $50 and $1,500 per violation as a statutory penalty for similar violations. *See Kernen Construction Co.,* 2021 WL 1734897, at *5 (reducing the requested penalties ($1,000 to $5,000 per violation) for SWPP violations, violations of technology standards, MIP violations, and reporting violations and awarding $50 to $500 per violation); *see also Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *13-14 (reducing the requested penalties ($3,000 per violation) for SWPP violations, MIP violations, monitoring violations, and reporting violations and awarding $1,500 per violation). Accordingly, the Court recommends assessing a $1,500 per violation as a statutory penalty for each of Plaintiff's remaining claims, which is the high end of the per violation range other courts have awarded. *See Kernen Construction Co.,* 2021 WL 1734897, at *5; *Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *13-14.

Due to Defendant's failure to appear in this action, the Court cannot assess the factors of economic benefit, good-faith efforts to comply with the applicable requirements, and economic impact on the violator, which could justify further reduction in penalties. *See Coastal Environmental Rights Foundation,* 2024 WL 4520350, at *13-14. In addition, though the Complaint does not allege a history of CWA violations, the Complaint alleges Defendant's violations started at the beginning of its industrial operations. *See Los Angeles Waterkeeper*, 2015 WL 13917738, at *7; *Kernen Construction*, 2021 WL 1734897, at *7 (finding that the only established violations of the CWA were the ones defendants had admitted to in the current lawsuit, and not prior enforcement actions). The violation history factor therefore also does not warrant further reduction.

b. *Other Reductions and Summary*

Plaintiff failed to adequately evaluate the civil penalties by claim, instead seeking the statutory daily maximum for 167 "violation days" based on rainfall data as described above. *See* Pl. Mot. Default J.

The Court recommends imposing civil penalties as follows.

Claim 1 Failure to Prepare, Implement, Review, and Update an Adequate SWPPP: a $1,500 violation. The Court notes that Plaintiff failed to identify another way to assess penalties for this claim. *See* Pl. Mot. Default J.

Claim 2 Failure to Implement an Adequate Monitoring and Reporting Plan: a $1,500 per violation penalty for each violation for 20 violations where four samples were to be collected, analyzed, and reported each reporting year, for five years. *See* Compl. ¶ 71; *Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *13-14 (failure to monitor claim calculated as a $1,500 violation for four violations for each reporting year for five years).

Claim 3 Submission of Annual Reports to the Regional Water Board: a $1,500 per violation penalty for each violation for five annual violations for each reporting year beginning July 2019 through the 2023-2024 reporting year, totaling $7,500. *See* Compl.

¶ 127 (beginning July 2019) & Ex. A at ECF No. 1 at 43 (notice through 2023-2024 reporting year); *Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *13-14 (annual report claim calculated as a $1,500 violation for each reporting year for five years).

Claim 4 Failure to Implement the Best Available and Best Conventional Treatment Technologies: no penalty assessed. This claim appears duplicative and/or overlapping with Claim 1 regarding the SWPPP failures. *See* Compl. ¶ 63 (required SWPPP objective to implement best management practice, and describe measures that comply with BAT and BCT standards). In its motion for default judgment, Plaintiff does not present any method for how to calculate violations for this claim, including any data to evaluate whether Defendant's facility implemented BAT or BCT though the Complaint alleges that U.S. EPA has established guidelines for determining whether a facility has implemented BAT and BCT (Compl. ¶ 77). *See* Pl. Mot. Default J.

Claim 5 Discharges of Contaminated Stormwater in Violation of Permit Conditions and the CWA and Claim 6 Discharge of Contaminated Stormwater without NPDES Authorization in Violation of the CWA: a $3,000 per violation penalty[3], but no penalty assessed. Plaintiff requests the Court assign penalties on its wrongful discharge claims (claims five and six). *See* Pl. Mot. Default J. ¶ 39 (citation omitted). However, the only evidence offered in support of Plaintiff's request for civil penalties for the discharge violations is NOAA rainfall data used to establish when a QSE took place. Pl. Mot. Default J. ¶¶ 38-43. Other district courts have declined to award penalties for discharge violations where a plaintiff has failed to produce sampling data showing that a defendant's stormwater discharges have exceeded EPA benchmarks. *See Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *14 (reducing a plaintiff's number of discharge violations based on QSE data from 157 violations to 2 violations where plaintiff only provided sampling data for violations that occurred on two days); *see*

[3] *See Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *13 ($3,000 per violation penalty for discharge violations).

*also Los Angeles Waterkeeper,* 2015 WL 13917738, at *8 (reducing the number of violations in a violation of effluent limitations claim to the number of dates a plaintiff provided sampling data showing that a defendant's storm water discharges exceeded EPA benchmarks). The Court agrees with this approach. Here, Plaintiff did not submit sampling data showing that Defendant's discharges have violated the CWA. *See* Pl. Mot. Default J. Therefore, the Court declines to recommend awarding penalties for Plaintiff's discharge violation claims (claims five and six).

Claim 7 Failure to Properly Train Facility Employees and Pollution Prevention Team: a $1,500 violation. *See* Compl. ¶¶ 134-35.

The Court's civil penalty analysis is summarized in the table below.

| Claim | Number of Violations | Per Violation Penalty | Civil Penalty Amount |
|---|---|---|---|
| Claim 1: Failure to Implement, Review, and Update SWPPP | 1 | $1,500 | $ 1,500 |
| Claim 2: Failure to Develop and Implement an Adequate Monitoring and Reporting Program | 20 | $1,500 | $ 30,000 |
| Claim 3: Submission of Annual Report to Regional Water Board | 5 | $1,500 | $ 7,500 |
| Claim 4: Failure to Implement BAT and BCT | 0 | 0 | $0 |
| Claim 5: General Permit Wrongful Discharge | 0 | $3,000 | $0 |
| Claim 6: NPDES Wrongful Discharge | 0 | $3,000 | $0 |
| Claim 7: Failure to Properly Train | 1 | $1,500 | $ 1,500 |

| | | | |
|---|---|---|---|
| Facility Employees | | | |
| Total: | | | $ 40,500 |

The Court recognizes that this amount is significantly less than the penalties assessed by courts granting default judgment in other CWA cases. In those cases, however, the plaintiff submitted an individualized analysis of each claim, the violations per claim, and sampling data for its discharge violation claims. *See Coastal Environmental Rights Foundation*, 2024 WL 4520350, at *14-15 (imposing $2,967,000 penalty for 4 discharge violations at $3,000 per violation and 1,972 violations at $1,500 per violation for coverage, SWPPP, monitoring, and reporting violations); *Kernen Construction Co.,* 2021 WL 1734897, at *6 (imposing $2,087,750 penalty for 11 undisputed discharge violations at $10,000 per violation and 9,450 undisputed violations at $50-$500 per violation for SWPPP, technology standards, MIP violations, and reporting violations).

4. <u>Legal Fees and Costs</u>

Plaintiff seeks $30,600.00 in attorney fees and $9,383.20 in litigation costs. Pl. Mot. Default J. ¶¶ 68-69. The Court addresses each separately below.

The Ninth Circuit affords district courts broad discretion in determining the reasonableness of fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). While the amount of a fee award is discretionary, the district court must "provide a concise but clear explanation of its reasons for the fee award." *Carter v. Caleb Brett LLC*, 757 F.3d 866, 868 (9th Cir. 2014). The Ninth Circuit utilizes the "lodestar" method for assessing reasonable attorney's fees. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Under the "lodestar" method, the number of hours reasonably expended is multiplied by a reasonable hourly rate. *Id*. Reasonable hourly rates are determined by the "prevailing market rates in the relevant community." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). "[T]he established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed

by attorneys of comparable skill, experience, and reputation.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)). Generally, "the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979 (quoting *Barjon*, 132 F.3d at 500). Here, the relevant community is Sacramento, California, which is where this district court is located.

Plaintiff seeks $30,600.00 in attorney fees for Xhavin Sinha for 68.0 hours at an hourly rate of $450 an hour. Sinha Decl. ¶¶ 27-28 (ECF No. 17-1). Attorney Sinha has been practicing law since being admitted to the California Bar in 2016 and holds a Bachelor of Science in Engineering and a Master of Science in Engineering. *Id*. ¶ 27. Attorney Sinha is also a licensed Professional Engineer in the State of California. *Id*. Plaintiff provides billing records from July 9, 2024 to March 17, 2026 for drafting the 60-day notice letter, drafting and editing the Complaint, and drafting and editing the motion for default judgment. Sinha Decl., Ex. A (ECF No. 17-1). Plaintiff also seeks costs in the amount of $9,383.20 for filing fees, service of process, and the services of an environmental consultant. *Id*.

The Court finds that 68.0 hours is a reasonable amount of time for the work completed. The Court also finds the hourly rate to be reasonable and reflect the prevailing market in Sacramento for attorneys of comparable skill, experience, and reputation. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 2017 WL 749018, at *8 (E.D. Cal. Feb 27, 2017) (approving hourly rates between $370 and $495 for associates and $545 and $695 for senior counsel and partners).

For costs, the Court declines to award the $341.29 requested for service of process of Defendant Kelley because Plaintiff voluntarily dismissed this defendant. (ECF No. 23.) The Court also finds the $8,500 requested for an environmental consultant is not substantiated. Plaintiff's motion fails to include any documentation of the work performed by the environmental consultant or a description of the work. *See* Pl. Mot. Default J. Additionally, the date of the environmental consultant's investigation and

technical review took place several months after the filing of the Complaint. *See* Sinha Decl., Ex. A at 8. Therefore, the Court declines to award Plaintiff $8,500 for the unsubstantiated environmental consultant fees. *See Litwin v. Surplus Lines Insurance Co.*, 2024 WL 3164543, at *3 (E.D. Cal. Jun. 25, 2024) (declining an award of filing fees for being unsubstantiated). The Court concludes the remaining requested costs are reasonable and should be awarded. Accordingly, the Court recommends that Plaintiff be awarded $30,600.00 in attorney fees for Xhavin Sinha and $541.91 for costs.

## IV. CONCLUSION

Based upon the findings above, it is RECOMMENDED:

1. Plaintiff's motion for default judgment (ECF No. 17) be GRANTED IN PART and DENIED IN PART.
2. Plaintiff's request for declaratory relief be DENIED;
3. Plaintiff's request for injunctive relief be DENIED;
4. Defendant Northwest Pallets, LLC, be assessed civil penalties in the amount of $40,500. Defendant shall pay the civil penalties ordered to the U.S. Treasury within 120 days from the date the district judge rules on these findings and recommendations.
5. Plaintiff be awarded $30,600.00 in attorney fees for attorney Xhavin Sinha and $541.91 for costs, which Defendant shall pay to Plaintiff within 60 days from the date the district judge rules on these findings and recommendations.
6. The Clerk of the Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the Court within 14

days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: September 9, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

7, paci.0726.25.mdj